INDUSTRIAL INVESTMENT DEVELOPMENT CORP., et al., Plaintiffs-Counter Defendants Appellants Cross-Appellees,

v.

MITSUI & CO., LTD., et al., Defendants-Counterclaimants Third Party Plaintiffs-Appellees Cross-Appellants,

v.

E.V. PEDERSEN, et al., Third Party Defendants Cross-Appellees.

No. 86–2695.

United States Court of Appeals, Fifth Circuit.

Sept. 20, 1988.

Rehearing and Rehearing En Banc Denied Oct. 19, 1988.

---

Fitzhugh H. Pannill, Jr., and Robert Hayden Burns, Butler & Binion, Houston, Tex., for plaintiffs-counter-defendants-appellants cross-appellees.

Thomas R. McDade, William R. Pakalka, Layne E. Kruse, Gerard G. Pecht, Jill Ann Duncan, John Wesley Raley, Fulbright & Jaworski, Houston, Tex., for defendants-counterclaimants third party plaintiffs-appellees/cross-appellants.

Before RUBIN, GARZA and JONES, Circuit Judges.

GARZA, Circuit Judge:

This thirteen-year old case passes before this court for the fourth time. On this appeal we are asked first to determine whether we have jurisdiction and, if so, whether the evidence supported the jury's findings and whether the district court properly held that both the plaintiffs and

the defendants failed to prove their claims. Finding jurisdiction and no error in the court below, we affirm.

I

In 1968, an American corporation, Industrial Investment Development Corporation (Industrial Investment), and its two Hong Kong subsidiaries, Indonesia Industrial Investment Corporation, Ltd. (Indonesia Industrial) and Forest Products Corporation, Ltd. (Forest Products), became involved in the lumber products business in East Kalimantan, Indonesia. The companies, under the direction of E.V. Pedersen, wanted to export timber from Indonesia, and sought to create a joint venture with P.T. Telaga Mas Kalimantan Company (Telaga Mas), an Indonesian corporation.

In December of 1970, Telaga Mas and the companies entered into a formal joint venture agreement. The agreement was signed by Pedersen and by Dr. Sadjarwo, the Supervisory Director of Telaga Mas, on behalf of Telaga Mas. On July 1, 1971, the Indonesian Government approved the joint venturers' proposed operation. Pedersen, Sadjarwo and Mr. Soedjarwo, the Indonesian Director General of Forestry, jointly executed a Forestry Agreement.

Murni Harianto, the President Director of Telaga Mas, and other Telaga Mas shareholders subsequently decided to thwart the joint venture. The Sadjarwo-Harianto corporate duel began when Sadjarwo held a shareholders' meeting on April 5, 1972. At that meeting the Sadjarwo group installed Sadjarwo as C.E.O. of the company, reformed the Board of Directors, and ratified all prior acts of Sadjarwo. Harianto called a second shareholders' meeting on May 5, 1972. This meeting resulted in a disclaimer of all of Sadjarwo's acts, expulsion of the Sadjarwo group, and a confirmation of Harianto as the C.E.O.

Harianto commenced proceedings in Indonesia by filing an *ex parte* petition. He claimed that the Final Agreement executed by Sadjarwo and Pedersen did not bind Telaga Mas because Sadjarwo had used an invalid power of attorney to sign on Telaga Mas' behalf. On June 27, 1972, the Indonesian trial court stated that the contested power of attorney used by Sadjarwo was "no longer effective and not valid according to law." The court concluded that the Final Agreement signed by "P.T. Telaga Mas Kalimantan as represented by Mr. Sadjarwo ... is not true and not valid, so that said agreement is not binding upon P.T. Telaga Mas."

On February 19, 1973, the Director General of Forestry cancelled the Final Agreement. Pedersen then instituted Indonesian court proceedings against Telaga Mas, seeking to reverse the earlier decision of the court. After proceeding once more before the trial court and the Indonesian court of appeals, it was held that the plaintiffs were not bound by the nullification order. The Director General of Forestry, however, refused to reinstate the Final Agreement.

In April of 1974, Pedersen was in Houston when he met Karl Odom, an employee of Mitsui & Company, Ltd. (Mitsui). Odom allegedly told Pedersen that Mitsui had bought all of the log production from the Telaga Mas concession, including substantial volumes of agathis logs, and made substantial loans to Telaga Mas during the active life of the joint venture. On June 19, 1975, Industrial Investment, Indonesia Industrial and Forest Products filed a complaint against Mitsui and its U.S. subsidiary. The lawsuit consisted of claims for alleged tortious interference with contractual relations and alleged Sherman Act violations. The plaintiffs also sought damages for breach of contract from Telaga Mas.

The district court granted Mitsui's motion for summary judgment. This court reversed the district court's judgment. *Industrial Inv. Dev. Corp. v. Mitsui & Co.*, 594 F.2d 48 (5th Cir.1979), *cert. denied*, 445 U.S. 903, 100 S.Ct. 1078, 63 L.Ed.2d 318 (1980). On remand, the district court granted Mitsui a second summary judgment. The Fifth Circuit again reversed. 671 F.2d 876 (5th Cir.1982). The Supreme Court granted Mitsui a writ of certiorari, 460 U.S. 1007, 103 S.Ct. 1244-45, 75 L.Ed.2d 475 (1983), and vacated and remanded

the case for further consideration in light of the Court's opinion in another case.

On May 9, 1983, the Fifth Circuit adhered to its reversal of the second summary judgment, and remanded the case to the district court for trial. 704 F.2d 785 (5th Cir.), *cert. denied,* 464 U.S. 961, 104 S.Ct. 393–94, 78 L.Ed.2d 337 (1983). Back in the district court, some nine years after the plaintiffs had filed suit, Mitsui filed a counterclaim against the corporate plaintiffs and a third-party claim against Pedersen, Sadjarwo, Theodore Law, Herbert Ziegler, and others. Mitsui alleged that these corporations and individuals interfered with Mitsui's business relationship with Telaga Mas.

Trial began on January 8, 1985. After the close of the evidence, the court granted a directed verdict in favor of the counterclaim defendants on all of Mitsui's counterclaims, and granted a directed verdict in favor of the third-party defendants on all of Mitsui's third-party claims. The case was submitted to the jury on nineteen interrogatories. Although the jury found that Mitsui tortiously interfered with the plaintiffs' contractual relationship with Telaga Mas, and that Mitsui engaged in attempted monopolization, actual monopolization, and restraint of trade, it also found facts that established Mitsui's affirmative defenses.

Regarding the tortious interference claim, the jury found that the plaintiffs knew, or with the exercise of ordinary care, should have known of the interference before June 19, 1973. Because the plaintiffs were found to have known of their claim more than two years before they filed suit, Judge Singleton held that limitations barred the claim. Regarding the Sherman Act claim, the jury found that Mitsui's conduct had no direct or substantial effect on United States commerce. Consequently, Judge Singleton held that there was no antitrust jurisdiction.

A myriad of post-trial motions were filed by the parties. On May 20, 1986, Judge Singleton determined that the plaintiffs recover nothing from Mitsui, and that Mitsui recover nothing from the counterclaim defendants or from the third-party defendants. Finally, a default judgment was entered for the plaintiffs against Telaga Mas in the amount of $48,771,360.

## II

### Jurisdiction

Mitsui's second motion to dismiss the appeal for lack of jurisdiction states that the real parties in interest are not before this court. Mitsui points out that Pedersen, Law and Ziegler have failed to appeal. Mitsui suggests that the three corporations that have appealed lack standing and have no real interest in this appeal because they signed away their right to sue. On March 17, 1975, the three corporations signed an agreement which, at Paragraph 5, provided that "Law is authorized to assign or transfer" the causes of action.

At trial, Mitsui filed a motion for summary judgment, arguing that the case should be dismissed because it was brought by three corporate plaintiffs and not by Pedersen, Law and Ziegler, the real parties in interest. Although Judge Singleton denied Mitsui's motion, he ordered that the individuals be brought in as additional party plaintiffs. In an order dated November 21, 1984, Judge Singleton simply wrote: "It is further ORDERED that Plaintiffs are hereby GRANTED leave to substitute in as additional party plaintiffs the three individuals along with the corporations already named. Plaintiffs' counsel is directed to submit an appropriate order naming the additional party plaintiffs."

Rule 17(a) of the Federal Rules of Civil Procedure requires that "[e]very action shall be prosecuted in the name of the real party in interest." The appellants claim that they intentionally decided not to add the individuals to the notice of appeal, and that the individuals should not have been brought in as plaintiffs. The appellants maintain that there was no assignment because there was neither express language nor intent to assign the causes of action. The agreement in which Mitsui alleges that Law was given control of the litigation was offered as an exhibit to Mitsui's amended

Motion for Summary Judgment and Other Relief.

■ While Pedersen, Law and Ziegler were made plaintiffs by order of the district court, the court made no finding that they were the real parties in interest or that the corporations did not have standing to assert the claims in their own right. The individual plaintiffs sustained no actionable damages in their individual capacities, even though they would stand to collect substantial sums in the event of a judgment favorable to the corporations. Further, the evidence does not compel a finding that the corporations assigned their substantive rights to Law. Therefore, Mitsui's second motion to dismiss the appeal for lack of jurisdiction is denied.

The Supreme Court's recent decision in *Torres v. Oakland Scavenger Co.*, — U.S. ——, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), does not affect our conclusion. While the *Torres* Court rejected our holding in *Ayres v. Sears, Roebuck & Co.*, 789 F.2d 1173 (5th Cir.1986), and determined that Rule 3(c) of the Federal Rules of Appellate Procedure be construed as a jurisdictional prerequisite, the Court did not consider a corporate-shareholder relationship which focused more on the question of which entity was the real party in interest. Our study of the record reveals that the corporations are real parties in interest for purposes of this appeal. Our study of the record does not convince us that the corporations assigned all their rights to Law, Pedersen, and Ziegler, as opposed to merely delineating the percentage of recovery the three would receive as shareholders in the event the suit was successful. The agreement with Law, we note, contemplates that the three will receive the proceeds of recovery "either directly *or indirectly through ownership of the entity receiving same*" (emphasis added). Because they followed procedure in challenging the judgment of the district court, we may entertain this appeal.

## Tortious Interference

The jury found that Mitsui tortiously interfered with the contract between Forest Products and Telaga Mas. The jury also found that the plaintiffs knew or should have known before June 19, 1973 that Mitsui had tortiously interfered with their contract. The plaintiffs did not file suit, however, until June 19, 1975, and thus Mitsui raised the defense that the plaintiffs were barred by limitations.

The district court rejected the plaintiffs' contention that their tortious interference claim did not accrue until they incurred damages. The court likewise rejected their contention that the limitations period was tolled from June 27, 1972 (the date the Indonesian trial court invalidated the final agreement), until December 2, 1974 (the date the Indonesian appellate court reversed the trial court's ruling). Consequently, the court granted judgment for Mitsui on the tortious interference claim.

■ The plaintiffs complain that their tortious interference claim was timely filed under the Texas two-year statute of limitations. The plaintiffs claim that the limitations period did not begin to run against them on their claim until December 2, 1974. They state that it was not until they received the February 19, 1973 letter from the Director General of Forestry that they knew anything about the two Indonesian judgments. At that time they promptly instituted legal proceedings to have those judgments set aside.

The plaintiffs have failed to explain to us how they were prevented from suing Mitsui in Texas by the pendency of *ex parte* litigation in Indonesia. Res judicata and collateral estoppel principles could not arise because these parties were not involved in the prior litigation. The principle of comity also could not arise in this case because foreign litigation of this sort could not affect the rights of litigants in America.

■ The plaintiffs also argue that there was insufficient evidence for the jury to conclude that Pedersen discovered or with the exercise of reasonable diligence should have discovered Mitsui's interference before June 19, 1973. In reviewing the jury's determination, this court is bound by the standard enunciated in *Boeing Co. v. Ship-*

*man,* 411 F.2d 365 (5th Cir.1969) (en banc). The reviewing court's task "is limited to determining whether the jury had before it any competent and substantial evidence that fairly supports the verdict." *Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 149 (5th Cir.1985).

Pedersen testified that he had no knowledge of Mitsui's role with Telaga Mas and the Indonesian Government until he met with Odom in April of 1974. However, Mitsui introduced an exhibit which purported to be a telex from one Mitsui office to another Mitsui office. The telex reported that a telephone call was received from Pedersen in which he complained that pressure was being used on Telaga Mas by Mitsui to hinder fulfillment of the contract. In this telex Pedersen apparently threatened legal action against Mitsui and Telaga Mas. The telex was drafted more than two years before the plaintiffs filed their complaint.

It is evident that Pedersen knew of Mitsui's interference before June 19, 1973. Pedersen was probably aware of the potential claim against Mitsui in 1971. On July 28, 1971, an actual repudiation of the contract occurred. Harianto sent a letter to the Indonesian Government stating that Telaga Mas rejected any venture with the plaintiffs. Pedersen admitted learning of the dispute on August 19, 1971. He admitted seeing Harianto's letter to the Director General in November of 1971. It seems fair to conclude that the jury had a substantial amount of competent evidence before it to reach its determination, and therefore the tortious interference claim is barred by limitations.

### Antitrust Claim

▮ The jury found that Mitsui was guilty of attempted monopolization, actual monopolization, and restraint of trade. However, it determined that Mitsui's conduct in regard to the Telaga Mas concession did not have a direct or substantial effect on United States import commerce. The district court also found a lack of antitrust jurisdiction both as a question of law and as a question of fact. The appel-lants claim that the jury's finding was against the clear weight of the evidence and the trial court abused its discretion in denying their motion for new trial.

The plaintiffs claim that the evidence established that they intended to import agathis logs into the United States. The plaintiffs' position is further established by Forest Products' negotiations with third parties which show the plaintiffs' intent to transact with Telaga Mas to import agathis logs into the United States. Mitsui offered testimony that agathis is highly substitutable with numerous hard woods and soft woods that are grown in, and exported from the United States. Thus, Mitsui contended that agathis neither is nor would be imported into the United States, and even if agathis were imported into the United States, it would constitute an insignificant percentage of the market.

Moreover, Mitsui presented evidence that the contracts signed by the plaintiffs provided that the destination of the logs was in other countries, and that the United States was not mentioned. Pedersen's original application to the Indonesian Government listed only Far Eastern and European destinations for the lumber. Another witness testified that no Kalimantan agathis logs had been imported into the United States. The primary market for East Kalimantan logs was identified at tri-al as Japan, Korea, Taiwan, and Europe.

A restraint that directly or substantially affects the flow of commerce into or out of the United States is within the scope of the Sherman Act. Our review of the record establishes that the jury was entitled to find that Mitsui's conduct did not have a direct or substantial effect on United States import commerce. Therefore, the district court properly concluded that it lacked antitrust jurisdiction.

### Mitsui's Claims

▮ Approximately nine years after the plaintiffs had filed suit, Mitsui filed a counterclaim against the three corporations and a third-party claim against several individuals. Those claims were premised on the ground that it was Mitsui that had a prior

contractual right to the timber in the Telaga Mas concession and that it was the plaintiffs who tortiously interfered. The plaintiffs maintained that Mitsui's counterclaims and third-party action were filed in bad faith. At the close of the evidence, Judge Singleton directed a verdict dismissing all of Mitsui's counterclaims and third-party claims.

The record provides little hope for Mitsui on its claims. We find scarce evidence of such quality and weight that reasonable jurors in the exercise of impartial judgment might have decided in Mitsui's favor had they been given the chance to do so. Clearly, Judge Singleton did not err in directing a verdict against Mitsui on its claims. Even if there had been sufficient evidence to go to the jury, certainly Mitsui could not hurdle the bar of limitations.

### III

We decline to rule whether the jurisdictional requisite "substantial or direct effect" presents a question of law or fact. The district court found insufficient effect to warrant the existence or exercise of antitrust jurisdiction. *See District Court Memorandum and Order* n. 1 (August 29, 1988) (citing *Industrial Investment Development v. Mitsui*, 671 F.2d 876, 884–85, n. 7 (5th Cir.1982) *vacated on other grounds* 460 U.S. 1007, 103 S.Ct. 1244, 75 L.Ed.2d 475 (1983)). Viewed as a question of fact, the jury found no direct or substantial effect existed. Therefore, any determination we make is not pertinent to the outcome of this appeal.

Noting that this court has jurisdiction, we hold that the evidence fairly supported the jury's verdict and that the district court did not err in disposing of this case, and therefore the judgment is AFFIRMED.